RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4 / 25 / 11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

BRYAN WYATT,
        Appellant

VERSUS

U.S. COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,
        Appellee

CIVIL ACTION
SECTION "P"
1:10-CV-00887

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Bryan Wyatt ("Wyatt") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on February 28, 2008, alleging a disability onset date of February 2, 2008 (Tr. pp. 90, 92), due to a back injury (Tr. p. 116). Those claims were denied by the Social Security Administration ("SSA") (Tr. p. 61).

A de novo hearing was held before an administrative law judge ("ALJ") on January 27, 2009, at which Wyatt was present with his attorney and a vocational expert (Tr. p. 23). The ALJ found that, although Wyatt suffers from severe low back pain, he has the residual functional capacity to perform sedentary work except work that involves more than occasional climbing, balancing, stooping, crouching, kneeling, and crawling (Tr. pp. 10-11). The ALJ also found that Wyatt cannot perform his past relevant work, was 46

years old, had a limited education, and could perform work that existed in significant numbers in the national economy such as general office clerk, information clerk, and bookkeeper clerk (Tr. pp. 14-15).   The ALJ concluded that Wyatt was not under a disability as defined by the Social Security Act at any time through the date of her decision on April 6, 2009 (Tr. p. 15).

The Appeals Council declined to review the ALJ's decision (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security.

Wyatt next filed this appeal seeking judicial review of the Commissioner's final decision.   Wyatt raises the following grounds for relief on appeal:

> 1. The ALJ did not comply with 20 C.F.R. § 404.1527(d), and improperly rejected the restriction assessed by Wyatt's treating doctor without good cause.
>
> 2. The ALJ failed to discuss why she did not find Wyatt meets the requirements of 20 C.F.R. § 404, Subpart P, Appendix 1, Section 1.04.
>
> 3. The vocational expert's testimony does not carry the Commissioner's burden of proof because the vocational testimony is at odds with the <u>Dictionary of Occupational Titles</u>, and the ALJ failed to resolve the conflict as required in Social Security Ruling 00-4p.
>
> 4. Remand for consideration of new and material evidence submitted to the Appeals Council is warranted pursuant to Sentence 6 of 42 U.S.C. § 405(g).

<u>Eligibility for Benefits</u>

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act.

2

42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C.

§405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not

4

supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

Summary of Pertinent Facts

At the time of his January 2009 administrative hearing, Wyatt was 47 years old, had a tenth grade education and had past relevant work as an eighteen-wheel truck operator (January 1992-November 2003) and a truck mechanic (November 2003-January 2008) (Tr. pp. 26, 27, 124).

Medical Records

In March 2002, Wyatt underwent an L4-5 interbody fusion with pedicle fixation and decompression due to a three-time herniated disc at L4-5 and intractable back and leg pain (Tr. pp. 166-167).

On February 4, 2008, Wyatt was treated at Rapides Industrial Medicine by Dr. Brian Jobe, a family medicine doctor, for low back and left hip pain (Tr. p. 200). Wyatt reported having low back pain since January 31, 2008 when he felt a "pop" in his low back (Tr. p. 200). Wyatt reported a history of back surgery for a fusion at L4-5 in 2002 and no major problems until the past weekend, with back pain at 10/10 which caused him to stay in bed, as well as leg pain when walking (Tr. pp. 200-201). An x-ray of

5

Wyatt's lumber spine showed the screws in proper position and the plates were intact and in proper position (Tr. p. 201). Wyatt was diagnosed with low back pain with left hip pain probably secondary to S1 joint dysfunction and a past history of a lumber fusion at L4/5 (Tr. p. 201). Dr. Jobe prescribed Lortab and Flexeril for pain, took Wyatt off work duty, and referred Wyatt to a neurosurgeon, Dr. Vaughn, for reevaluation of his back (Tr. p. 201).

Wyatt was treated in the LSU Health Sciences Center emergency room on February 21, 2008 for low back pain and leg pain (Tr. pp. 207, 279-282). Wyatt reported that, although he had been referred to a neurosurgeon, the doctor had moved out of state (Tr. p. 207). Wyatt had pain on palpation of his midline spine, negative straight leg raises, negative flexor hallucis longus, no pain to his hips with rotation, and he was able to stand on his toes and heels and could ambulate, but was unable to walk on his toes and heels due to pain (Tr. pp. 207-208). A CT scan of Wyatt's lumbar spine showed a normal alignment of Wyatt's laminectomy at L4/5 with multilevel degenerative changes (osteophytes, vacuum phenomenon, and sclerosis) (Tr. p. 214). X-rays of his lumbar spine showed minimal malalignment at L3-4 (probably post-operative), but no hardware failure, no evidence of spondylosis or spondylolisthesis, and no acute fracture or dislocation (Tr. p. 295).

Dr. Gregory Bell, Wyatt's family doctor, examined Wyatt's low

back injury in March 2008 (Tr. p. 260).  Dr. Bell noted Wyatt had injured his back at work on January 31, 2008, had pain (rated 8 on a scale of 10) radiating down his left leg to his toes, and was being treated at LSU Health Sciences Center (Tr. p. 260).

A physical residual functional capacity form was filled out by Dr. Gerald Dzurik, a pediatrician, on May 1, 2008, after he reviewed Wyatt's medical reports.  Dr. Dzurik found that Wyatt can occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds, sit up to 6 hours in an 8 hour day, do unlimited pushing and pulling, and only occasionally climb, balance, stoop, kneel, crouch, or crawl (Tr. pp. 217-224).

In June 2008, Dr. Bell noted Wyatt's low back pain, pain on range of motion, and positive straight leg raise and stated that Wyatt was unable to work (Tr. p. 258).

Also in June 2008, Wyatt was evaluated at the LSU Health Sciences Center for his lumbar back pain with radiculopathy (Tr. p. 274).  The physician's assistant found normal range of motion and strength in both lower extremities (Tr. p. 274).  Wyatt was prescribed a medrol dosepak, amitriptyline HCL, darvocet, flexeril, and prinzide (for blood pressure), and was told to apply moist heat to his low back a few times a day (Tr. p. 275).  Physical therapy was also ordered (Tr. p. 275).  In July 2008, the physical therapist made objective findings that Wyatt's back was tender to palpation, he had 34 degrees flexion and 9 degrees extension, he

had an antalgic gait,[1] decreased single leg stance on the left leg, and straight leg raises were painful at approximately 50 degrees; it was noted that Wyatt was difficult to fully assess due to his pain (Tr. p. 269). Wyatt's flat back posture was found to increase his pain, so he was instructed on how to improve his posture when standing and sitting and was given strengthening exercises (Tr. p. 269). Wyatt was also issued a lumbar corset to help support his trunk (Tr. p. 269).

In October 2008, Dr. Bell stated that Wyatt is taking both Flexeril and Darvocet for his low back pain, he has evidence of left lower extremity radiculopathy, he is unable to sit or stand for any length of time, he has pain on range of motion and positive straight leg raising, he has to use a cane to assist him with walking, and he is unable to work at this time (Tr. p. 298).

In January 2009, Dr. Bell wrote that Wyatt has had three back surgeries but continues to be significantly symptomatic with lower extremity radiculopathy, he has pain on range of motion and a positive SLR maneuver, sitting is limited to approximately 15 to 30 minutes at a time, standing was limited to ten to 15 minutes, he should avoid stooping, a cane is needed for stability, any work activity needs to include the stipulation that he be allowed to

---

[1] An "antalgic gait" is a limp in which a phase of the gait is shrtened on the injured side to alleviate the pain experienced when bearing weight on that side. The American Heritage Stedman's Medical Dictionary (2002 Houghton Mifflin Co.).

take periodic breaks to lay or recline during the workday, and he did not think further surgery would help Wyatt (Tr. p. 312).

On April 3, 2009, Wyatt was evaluated by Dr. Pierce D. Nunley, an orthopedic surgeon at the Spine Institute of Louisiana (Tr. p. 329). Dr. Nunley found Wyatt has moderate to significant distress due to pain, he ambulates favoring his left leg without assistance, he has limited range of motion of the lumbar spine with a significant component of PGD (pelvic girdle dysfunction) and "quite significant" left S1 joint tenderness (Tr. p. 327). Dr. Nunley's impression was low back pain with left lower extremity radiculopathy, pelvic girdle dysfunction, multilevel lumbar spondylosis, multilevel lumbar DJD (degenerative joint disease), and status post-lumbar decompression with interbody fusion and instrumented posterolateral fusion at L4/5 (Tr. p. 327). An EMG and nerve conduction studies showed no electrodiagnostic evidence of radiculopathy, neuropathy or myopathy in Wyatt's lower extremities (Tr. pp. 324-325). However, an MRI of Wyatt's lumbar spine showed mild degenerative disc disease without significant nerve impingement at L1/2 and L2/3, facet hypertrophy with moderate stenosis bilaterally at L4/5 which affects the L4 nerve roots, no nerve impingement at L4/5, and moderate spondylosis without significant nerve impingement and mild neural foraminal narrowing bilaterally possibly affecting the L5 nerve roots (Tr. p. 329). Wyatt was sent to physical therapy (Tr. p. 327). After an S1

selective nerve root block was unsuccessful, Dr. Nunley recommended a left L5 selective nerve root block and further physical therapy (Tr. p. 323).

## Administrative Hearing

At his January 2009 administrative hearing, Wyatt testified that he was 47 years old, lived in his home with two of his children (21 and 25 years old), had a tenth grade education, and last worked December 31, 2007 as a mechanic (Tr. pp. 26-27).

Wyatt testified that he can no longer work due to three back surgeries since 2000 and unbearable back pain (Tr. p. 28). Wyatt testified that he cannot sit for more than 15 minutes at a time and he has to change positions, sitting and laying down, so he has to lay down during the day to relieve the pain which radiates down his left hip and leg (Tr. p. 28). Wyatt testified his first back surgery was in December 1999, the second was in March 2000, and the third was in 2002 (Tr. p. 29).

Wyatt testified his back pain had returned and begun to increase in the past few years; he has the same symptoms as when he first injured his back-a burning pain in his low back and a sharp pain in his hip and leg (Tr. pp. 38, 41-42). Dr. Bell prescribed a cane for Wyatt that he uses everywhere he goes (Tr. pp. 38, 43), and LSU Health Sciences Center prescribed a back brace which Wyatt uses sometimes (Tr. p. 39). Wyatt testified that he has to spend about four hours a day, four days a week, either sitting in his

10

recliner with his feet propped up or laying on his bed (Tr. pp. 39-41).

Wyatt testified that he takes medication for hypertension, which he has had for 15 years, he takes depression medication, Lexapro, prescribed by his family practitioner, Dr. Bell, and he takes Darvocet and Flexeril for pain (Tr. pp. 29-30). Wyatt testified that he has been depressed due to being unable to work and his wife recently passing away, but counseling has helped (Tr. pp. 30-31).

Wyatt testified that, on a normal day, he goes back and forth from his bedroom to his living room, and from sitting on his porch to laying on the sofa to sitting in his recliner (Tr. p. 32). Wyatt also tries to cook supper for his children, who both work (Tr. p. 32). Wyatt testified that his daughter and his daughter-in-law take care of the house (laundry, dishes, etc.) and do the grocery shopping (Tr. pp. 32-33). Wyatt testified that he can lift a gallon of milk or a grocery bag if he does not have to reach down and pick it up (Tr. p. 33). Wyatt's son does the outside work (Tr. p. 33).

Wyatt testified that he visits friends and relatives, goes to church some, and does not watch much television (Tr. p. 33). Wyatt used to love to fish but is no longer able because of both financial and physical reasons, such as being unable to sit for a long time (Tr. pp. 33-34). Wyatt testified that he takes Ambien to

11

help him sleep (Tr. p. 34).  Wyatt drives to places close to his house, such as the store or the post office, but does not take long trips in the car (Tr. p. 34).

Wyatt testified that he still sees Dr. Bell, who gives him up to two refills on his medications between examinations (Tr. p. 34). Wyatt testified he had a CAT scan in July 2008, and was hospitalized in January 2008 for chest pains and high blood pressure (Tr. p. 35).  Wyatt testified he can walk about 100 feet, stand up to 10 minutes, sit up to 15 minutes, and lift up to 10 pounds (Tr. p. 35).  Wyatt has to take a  standing or walking break for about ten minutes before he can sit again (Tr. p. 48).  Wyatt testified he does not have a problem getting along with people and he does not have problems concentrating (Tr. p. 36).  However, he does not read and write very well (Tr. p. 37).

The vocational expert ("VE") testified the Wyatt's past relevant work as an 18-wheel truck driver was medium work (SVP 4), but the lifting he did for that job was heavy work (Tr. p. 44). The VE further testified that Wyatt's work as a diesel mechanic was heavy work with an SVP of 7 (Tr. p. 44).

The ALJ posed a hypothetical question to the VE which involved a person of the same age, education and vocational experience as Wyatt, who is limited to light work but can walk and stand for only four hours in an eight hour day and can only occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. p. 45).  The VE

testified that such a person could work as an office helper (light, SVP 2, DOT 239.567-010, 166,000 jobs in the nation and 2500 jobs in Louisiana), a stock clerk and order filler (light, SVP 2, DOT 209.587-034, 188,261 jobs nationally and 2715 in Louisiana), or a light general office clerk (light, SVP 2, DOT 222.587-038, 176,300 jobs in the nation and 2426 in Louisiana).

The ALJ posed a second hypothetical question to the VE which involved the same person except he can only perform sedentary work involving sitting and standing half of the time, the same postural limitations, and the ability to lift only 10 pounds instead of 20 (Tr. p. 46). The VE testified that such a person could work as a general office clerk (sedentary, SVP 2, DOT 249.587-018, 64,100 jobs in the nation and 882 in Louisiana), an information clerk (sedentary, SVP 2, DOT 237.367-046, 99,700 jobs nationally and 1276 in Louisiana), or a bookkeeping clerk (SVP 2, DOT 219.587-010, 75,600 jobs nationally and 1012 jobs in Louisiana). The VE further testified that she assumed the person would still be able to sit six hours in an eight hour day (Tr. p. 48). However, the ALJ stated she meant the person should be able to make postural changes at will (Tr. p. 49). The VE testified that if the postural change is no more than to stand and stretch, perhaps walk to get some water, and then return to sitting and working, the hypothetical person would be able to do the sedentary jobs listed (Tr. p. 50). However, if the person needs to be able to walk around as long as

13

they want, he would not be able to do any of the jobs (Tr. pp. 50-51). Also, if the person needed to sit for ten to fifteen minutes, then stand or walk for ten minutes, on that ratio throughout the day, he would not be able to do the bookkeeping, information clerk or receptionist jobs, but may be able to work as a general office clerk, although the number of existing jobs would be cut in half (Tr. p. 51).

The ALJ then posed a third hypothetical question involving the same person who can do only sedentary work but needs the use of a cane (Tr. p. 46). The VE testified the use of a cane would not affect the person's ability to perform sedentary work, but would affect his ability to perform light work, since that work involves more walking and carrying things (Tr. p. 47). Therefore, the light work jobs would be eliminated if the person needed to use a cane (Tr. p. 47).

The ALJ's fourth hypothetical question involved the same person with the exception that he would have to recline or take unscheduled breaks (Tr. p. 47). The VE testified there are no jobs for such a person because he would be unable to work at a table height level once he reclined, and unscheduled breaks would keep him away from work too much (Tr. p. 47).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R.

14

§416.920(a).  The sequential process required the ALJ to determine whether Wyatt (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Wyatt has not engaged in substantial gainful activity since February 2, 2008 (Tr. p. 10), and that he has a severe impairment of low back pain, but that he does not have an impairment or combination of impairments listed in

15

or medically equal to one listed in Appendix 1 (Tr. pp. 10-11). The ALJ also found that Wyatt is unable to perform his past relevant work as a truck driver and a diesel mechanic (Tr. p. 20).

At Step No. 5 of the sequential process, the ALJ further found that Wyatt has the residual functional capacity to perform the full range of sedentary work except as reduced by his inability to do more than occasional climbing, balancing, stooping, crouching, kneeling, and crawling (Tr. p. 11). The ALJ found that the claimant is a younger individual with a limited education (Tr. p. 14). The ALJ concluded that there are a significant number of jobs in the national economy which Wyatt can perform, such as general office clerk, information clerk, and bookkeeper and, therefore, Wyatt was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on April 6, 2009 (Tr. p. 15).

<u>Law and Analysis</u>

<u>Issue No. 1 - Treating Doctor's Opinion</u>

First, Wyatt contends the ALJ did not comply with 20 C.F.R. § 404.1527(d), and improperly rejected the restrictions assessed by Wyatt's treating doctor (Dr. Bell) without good cause and adopted instead the opinion of the non-examining state agency physician, Dr. Dzurik.

Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting

16

physician. Carry v. Heckler, 750 F.2d 479, 484 (5th Cir. 1985).
Also, Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1984), citing
Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981), and cases
cited therein; Warncke v. Harris, 619 F.2d 412, 416 (5th Cir.
1980); Strickland v. Harris, 615 F.2d 1103, 1109-1110 (5th Cir.
1980); Williams v. Finch, 440 F.2d 613, 616-17 & n. 6 (5th Cir.
1971). However, the weight to be given a physician's statement is
dependent upon the extent it is supported by specific clinical
findings. Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225
(5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir.
1983). An acceptable medical opinion as to disability must contain
more than a mere conclusory statement that the claimant is
disabled. It must be supported by clinical or laboratory findings.
Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981).

In Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001), the Fifth
Circuit stated it has long held that ordinarily the opinions,
diagnoses, and medical evidence of a treating physician who is
familiar with the claimant's injuries, treatments, and responses
should be accorded considerable weight in determining disability.
However, the opinion of the treating physician is not conclusive
and the ALJ must decide the claimant's status. Accordingly, when
good cause is shown, less weight, little weight, or even no weight
may be given to the treating physician's testimony. The good cause
exceptions recognized by the Fifth Circuit include disregarding

17

statements that are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. Myers, 238 F.3d at 621, citing Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).

In the case at bar, Dr. Bell is Wyatt's family doctor.  Dr. Bell referred Wyatt to LSU Health Sciences Center for diagnosis and treatment of his back pain, made periodic examinations of Wyatt, refilled his medications, and provided him with a cane.  Dr. Dzurik, the state agency physician, did not examine Wyatt; instead he only reviewed Wyatt's medical records as of May 1, 2008 and gave his opinion based on those records.  It is noted that Dr. Dzurik is a pediatrician.

The value of Dr. Bell's opinion stemmed from the fact that he saw and examined Wyatt regularly throughout the relevant time period and was familiar with Wyatt's complaints of pain, medications, and progress.  To whatever extent a pediatrician may be deemed qualified to express an opinion as to a claimant's low back injury, treatment, and pain, Dr. Dzurick was hampered by the fact that he only viewed medical records through May 1, 2008, which

did not include the LSU Health Sciences Center tests, treatments and physical therapy in June and July 2008, and the orthopedic surgeon's (Dr. Nunley's) examination and treatment of Wyatt in 2009.  Therefore, Dr. Dzurick did not have the benefit of their test results and evaluations of Wyatt's back problems.

The ALJ had the LSU Health Sciences Center records.  However, the ALJ chose to accept the opinion of a non-examining physician who is a pediatrician over that of the treating family doctor and the LSU physician (another family doctor) and physical therapist.[2]

---

[2] In the case at bar, the ALJ stated (Tr. pp. 13-14):
"The record fails to demonstrate that the claimant's [sic] suffers with frequent or severe symptoms to preclude all work.  He has been prescribed Darvocet for pain, a medication given for mild to moderate pain.  He testified that the medications give some relief but does [sic] not take the pain away. As noted above, the claimant stopped working in December 2007 but he was working under a truck on January 31, 2008 when his complaints of low back pain were recorded.  He drives albeit not for long, tries to cook, and attends church occasionally.  He watched T.V. until November 2008 (presumably until his wife's illness and subsequent death) but not since.  Considering all of the evidence under the criteria of Regulations 20 C.F.R. 404.1529, 416.929 and SSR 96-7p, allegations of frequent or severe pain or other severe symptoms cannot be credited.
"As for the opinion evidence, Dr. Bell's medical source statement that the claimant cannot sit-stand for ten to fifteen minutes and needs periodic breaks to lie down or recline is not substantiated by the objective evidence.  He is the claimant's primary care physician (not a specialist) who treats him for all his illnesses and refills his prescriptions.  He gave the claimant a cane in July 2008 at which time the claimant voiced no complaints.
"The undersigned is cognizant that appropriate consideration must be given to the state medical

19

As noted by the ALJ, Dr. Bell is not a specialist; however, he probably has more experience with back problems, as a family doctor, than Dr. Dzurik does as a pediatrician. Since Dr. Dzurik's opinion was based on a limited amount of medical evidence, he did not examine Wyatt, and he was not qualified, as a pediatrician, to render an opinion as to the physical limitations caused by Wyatt's back problems, the ALJ erred in relying on Dr. Dzurik's opinion. It is undisputed that Wyatt has medical problems with his back. Therefore, if the ALJ did not care for the fact that Dr. Bell is not a specialist, she should have obtained a consultative evaluation by an orthopedic physician.

Moreover, the Appeals Council erred in concluding that Dr. Nunley's medical records did not change the ALJ's conclusion; Dr. Nunley is an orthopedic surgeon, the only treating physician who is qualified to render an opinion as to the nature of Wyatt's back problems and the limitations imposed by them. Dr. Nunley found, from tests, that nerve roots are being affected by Wyatt's facet hypertrophy with moderate stenosis bilaterally at L3/4 and mild neural foraminal narrowing bilaterally at L5/S1. Since the ALJ had

consultant under the provisions of SSR 96-6p. Based on the objective evidence, the state consultant concluded that the claimant could perform light work with standing/walking for 4 hours in an 8-hour day. The undersigned has given the claimant the benefit of doubt with respect to his there prior surgeries and pain to find that he is capable of only sedentary work with postural limitations enumerated above."

concluded that Wyatt's complaints of pain and need for frequent postural changes are not supported by the objective evidence, Dr. Nunley's test results seem to contradict the ALJ's conclusion.

The ALJ erred in relying on the opinion of the consulting state examiner and the Appeals Council erred in finding Dr. Nunley's medical records did not change the ALJ's findings. Therefore, substantial evidence does not support the Commissioner's finding that Wyatt can perform sedentary work except for work involving more than occasional climbing, balancing, stooping, crouching, kneeling, and crawling. This case should be remanded to the Commissioner for further consideration of Wyatt's physical limitations in light of Dr. Nunley's medical evaluations and for further medical evaluation of Wyatt if necessary.

Issue No. 2 - Listing 1.04

Next, Wyatt contends the ALJ erred in failing to discuss why she did not find Wyatt meets the requirements of 20 C.F.R. § 404, Subpart P, Appendix 1, Section 1.04.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed.

21

2d 967 (1990).  See also, Selders v. Sullivan, 914 F. 2d 614,
619(5th Cir. 1990).  For a claimant to show that his impairment
matches a listing, it must meet all of the specified medical
criteria.   An impairment that manifests only some of those
criteria, no matter how severely, does not qualify.  Sullivan v.
Zebley, 110 S. Ct. at 891.

Where the impairment is severe, the Commissioner must
determine whether the impairment is so severe that the claimant
will be presumed to be disabled.  This determination is made by
comparing the impairment to a specific Listing of Impairments in
the SSA regulations.  See 20 C.F.R. § 404, Subpart P, Appendix 1.
If the claimant's condition is listed, or is medically equivalent
to a listed impairment, the claimant is conclusively determined
disabled.  Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987).
Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).
The ALJ is charged with carefully considering all the relevant
evidence and linking his findings to specific evidence.  A bare and
summary conclusion that a plaintiff does not meet the criteria of
any listing is beyond meaningful judicial review.   Drapeau v.
Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

As Wyatt contends, the ALJ failed to discuss the listings,
instead stating simply that Wyatt does not meet the listed
impairments in Appendix 1 (Tr. p. 11).  Wyatt contends he meets
Listing 1.04, although he does not specify which part he thinks he

22

meets.

Listing 1.04 states: "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:..." nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication[3] "established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." "Inability to ambulate effectively" is defined in Listing 1.00B2b is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand held assistive device that limits the functioning of *both* upper extremities. Examples of inability to ambulate effectively include the inability to walk without the use of two canes or the inability

---

[3] Pseudoclaudication is due to narrowing of the lumbar spinal canal (spinal stenosis), which puts pressure on the spinal root nerves, which control movement and sensation in the legs. Pseudoclaudication typically causes pain and discomfort in the buttocks, legs and feet with walking or prolonged standing, and may cause numbness and weakness in the legs.  Leg pain is typically relieved by sitting or bending forward at the waist, which reduces nerve pressure.  Treatment of pseudoclaudication is directed at the underlying cause of the spinal stenosis. Medlineplus Health Information: "Spinal stenosis," available at http://www.mayoclinic.com/health/pseudoclaudication/HQ01278 (a service of the U.S. National Library of Medicine and the National Institutes of Health).

to walk a block at a reasonable pace on rough or uneven surfaces.

Dr. Nunley found, as did Dr. Bell and the physical therapist, that Wyatt limps favoring his left leg.  Dr. Nunley's MRI showed facet hypertrophy with moderate stenosis bilaterally at L4/5 which affects the L4 nerve roots.  However, the evidence is inconclusive as to the extent of Wyatt's ambulation difficulties.

Since the ALJ failed to consider Listing 1.04, substantial evidence does not support the Commissioner's conclusion that Wyatt does not meet the listings.  Wyatt will have an opportunity to show whether or not he meets Listing 1.04 on remand.

Issue No. 3 - VE's Testimony

Wyatt contends the vocational expert's testimony does not carry the Commissioner's burden of proof because the vocational testimony is at odds with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to resolve the conflict as required in Social Security Ruling 00-4p.

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the national economy that the claimant can perform.  Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein.

The value of a vocational expert is that he is familiar with

the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specified job. <u>Fields</u>, 805 F.2d at 1171.

Wyatt argues the VE heard the testimony about his limited education and reading deficit, but testified Wyatt could do sedentary work as a general office clerk, bookkeeping clerk, and information clerk. Wyatt contends, for instance, that the office clerk job requires the worker to read at a rate of 190 to 215 words per minute, entails using a dictionary, and requires level 3 clerical perception which is an ability higher than one-third of the population.

The Fifth Circuit has held that, to the extent there is any implied or indirect conflict between the vocational expert's testimony and the DOT, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. All kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. <u>Carey v. Apfel</u>, 230 F.3d 131, 142 (5th Cir. 2000).

The job of "office clerk" in DOT 249.587-018 is actually a "document preparer" job and requires a reasoning level of 3 (carry

out instructions) and a reading level of 2 (read 190-215 words/minute, use a dictionary, read instructions) and the ability to write compound and complex sentences. The job of "information clerk" in DOT 237.367-046 is actually "telephone quotation clerk" and requires a reasoning level of 3, a math level of 2 (add, subtract, multiply, divide, use fractions, compute ratios, rates, and percentages, draw and interpret bar graphs), a reading level of 3 (read a variety of novels, magazines, atlases, encyclopedias, safety rules, and instructions), and the ability to write reports and essays. The job of "bookkeeping clerk" in DOT 219.587-010 is actually "parimutuel-ticket checker" or "ticket counter" in the amusement and recreation industry, and requires level 3 reasoning, level 3 math (compute discount, interest, profit, loss, commissions, markup, selling price, ratio, proportion, percentage, and calculate surfaces, volumes, weights, and measures), algebra, geometry, level 3 reading, and the ability to write reports and essays.

The jobs described above appear to exceed Wyatt's tenth grade education in math, reading, and writing. The VE did not address the DOT discrepancies and Wyatt did not ask her about them.

However, according to the DOT (625.281-010), the job of diesel mechanic, which Wyatt performed from 2003-2008, requires a math level of 3 with algebra and geometry, a reasoning level of 4, a reading level of 3, and the ability to write reports and essays.

26

Therefore, the other jobs are not necessarily beyond the scope of Wyatt's abilities.

In any event, the case must be remanded for consideration of new evidence as to Wyatt's impairments and residual functional capacity. Therefore, inquiry may be made into Wyatt's vocational abilities and jobs on remand.

Issue No. 4 - Remand

Finally Wyatt asks for a remand pursuant to Sentence 6 for consideration of new and material evidence submitted to the Appeals Council is warranted pursuant to Sentence 6 of 42 U.S.C. § 405(g).

In Shalala v. Shaefer, 509 U.S. 292, 296-7, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993), the Supreme Court stated the exclusive methods by which district courts may remand to the Commissioner are set forth in sentence four and sentence six of 42 U.S.C. § 405(g),[4] as follows:

> "[4] The district court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."

> "[6] The court may, on motion of the Commissioner made for good cause shown before he files his answer, remand the case to the Commissioner for further action by the Commissioner, but only upon a showing that there is new

---

[4] Immediate entry of judgment (as opposed to entry of judgment after post-remand agency proceedings have been completed and their results filed with the court) is the principal feature that distinguishes a sentence-four remand from a sentence-six remand. Shaefer, 509 U.S. at 297, 113 S.Ct. at 2629. Also, Istre v. Apfel, 208 F.3d 517 (5th Cir. 2000).

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

A sentence six remand may be ordered in only two situations: where the Commissioner, for good cause shown, requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency. Shaefer, 509 U.S. at 297, 113 S.Ct. at 2629, citing Melkonyan v. Sullivan, 501 U.S. 89, 99-100, 111 S.Ct. 2157, 2163-64 (1991). Pursuant to the sixth sentence of 42 U.S.C. § 405(g), the court may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Istre, 208 F,3d at 519; Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981).

The "new evidence" is the medical evidence from Dr. Nunley, as well as new reports by Dr. Bell. Since Wyatt submitted that evidence to the Appeals Council, it has already been presented to the agency and it is in the administrative record before this court. Therefore, it is not "new evidence" within the purview of

28

Sentence 6.

As already discussed above, substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Wyatt to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Wyatt can perform, given his true impairments. Therefore, Wyatt's case should be remanded to the Commissioner for further proceedings pursuant to Sentence 4.

<u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Wyatt's appeal be GRANTED, the final decision of the Commissioner be VACATED, and Wyatt's case be REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS, including re-evaluation of Wyatt's impairments and residual functional capacity in light of the medical evidence from the orthopedic surgeon, Dr. Nunley, and other recent medical evidence.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of April, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE